We have a video participation by the attorney, let's see, is that Sarah Bond on the video? We don't have her on video. Yes, Your Honor. We do. Okay, and then we... Yes, Your Honor. Okay, so Ms. Bond is on video and Ms. Moore is here? Yes, Your Honor. Great, then we're ready to go. Appellants, counsel, Ms. Moore should start. May it please the Court, my name is Rhianna Moore and I represent the plaintiffs below, Montana Right to Life, Montana Right to Life PAC, and Julie Daffin. I will be referring to my clients collectively as Montana Right to Life, and I would also like to reserve two minutes of my time for rebuttal. The record shows that the district court abused its discretion when it awarded attorneys fees by awarding fees based on a strict ratio, comparing the number of issues won to the total number of issues claimed. In your application to the district judge, did you tell him that you had already deducted the hours that were attributable to the other cases? Yes, Your Honor, we did. That was clearly set forth in the petition, was it? Yes, it was, Your Honor. Our next claim is that he had compounded that error of the ratio by deducting the two-thirds ratio that he concluded was appropriate from the already reduced fee petition, and then he also abused his discretion when he failed to award any fees for time spent litigating the fee petition. After plaintiffs challenged several of Missouri's campaign finance laws, the district court held for plaintiffs on four out of six claims, and the remaining two issues on summary judgment. The remaining two issues were then found for the defendant after a bench trial and further discovery. The plaintiffs originally filed their fee petition within 14 days of the summary judgment motion being decided, because that was a final judgment as to those issues, and Rule 54 does require that you file your petition for attorneys fees within 14 days. The district court denied that petition and asked us to please refile at the end of the case. So after we had done that, after the end of the case, we did refile our petition, and at that time we did exclude all of the hours that were reasonably expended on the unsuccessful claims. An abusive discretion standard is generally pretty lenient. However, this Court in Cunningham said that the Court's discretion to award attorneys fees under Section 1988 has been narrowly construed and uncircumscribed by the decisions of the Supreme Court and this circuit. Further, in both Gates and Furland, this Court said that the decisions of district court employing percentages are subject to a heightened scrutiny. In this case, it certainly appears that you made an effort to take out hours, although it was somewhat – I think your documentation was confusing and your calculations were confusing at times. Does that matter at all in terms of the judge's ability to understand what you were doing and in any way justify what he did? Could you repeat your question? Well, it's simply that the number – as I recall, the original – the second petition had added the numbers up wrong, and it was just hard to figure – it was clear that you were trying to extract some set of hours, but what you were extracting, how many, whether – how they were connected to the issues that you lost was never all that clear. So the question is whether that – and you acknowledged mistakes along the way. So the question is, does that sort of confusion in any way justify what the judge did? I don't believe it does, Your Honor, because I believe even though there were some instances where things could have been confusing, once you review the fee petition as a whole, that confusion is eliminated. Including on an hour-by-hour basis or some way to see what hours you're taking out and why? Yes, Your Honor. I have a suggestion I want to make. We'll just – we'll add a few minutes, seconds to your time. But this is directed to Ms. Bond. Ms. Bond? Yes. Ms. Bond, you're in the camera here. We're relatively new with video participation, but it's very distracting, your flipping papers and motion on the camera during the argument. It's not your fault. It's our system. But I'm wondering if you could sit down out of the visual range during your opponent's argument. Yes, Your Honor, I can do that. I had muted it. I will re-mute the camera and sit down. Thank you. It wasn't making noise. It's the visual. We have monitors right in front of us up on the bench. And so I'd like to make it more like it would be if you were here and sitting at the table. Thank you. Yes, Your Honor. Okay. Okay, now, so go ahead. I'm sorry for that. Ms. Moore, we'll add back whatever time we just used up. In addition to the hours for the issues that you lost on, there was also some fees on fees time, which the judge denied with a somewhat cryptic explanation. Do you – is there anything I'm not understanding about that time in terms of why it could have been denied or why it was denied? No, Your Honor. The only reason given in the judge's order is that it was extended after the summary judgment was decided, and that is not a valid reason to just not give fee petitions. That's like saying because the trial is over, you don't get fees for preparing the fee petition. Well, he may have been saying that he don't – essentially already denied it earlier and since there was no additional time, he – but I don't see why that would matter particularly. There was actually additional time because of preparing the renewed fee petition and also time spent with opposing counsel trying to settle the case. That covered a couple of months' worth of time back and forth. Trying to settle it and then preparing new briefs when the Court asked for people to – for us to prepare final briefs. So there was additional time that was spent after that that I believe is reasonable given the Court's orders in the case and the parties' attempts to settle. I guess the last question is this. What the judge ended up doing was simply doing this two-third – taking out one-third of the time on the theory that it was one-third of the issues. Supposing that you hadn't already taken some time out, would that be justified anyway? Is that a reasonable way to proceed in terms of estimating the success and the merits? If the time records are confusing, both this Court and the Supreme Court have given leeway to the judge to go ahead and do that, especially if there's what's considered a voluminous fee request. Well, to go ahead and do it on a percentage basis, but it's a percentage basis that just takes all the issues as if they were co-equal and says one-third of the time is gone, is that a fair estimate of the amount of time spent on the issues as to which you didn't succeed? Well, see, that is the problem with taking a strict percentage reduction, Your Honor. You've hit the nail exactly on the head, is that when you do a strict percentage reduction, you assume that every issue is equal, that the attorneys spent an equal amount of time on every issue. And you also presume that there were not items that would have had to have been done regardless of whether you won on an issue. For instance, although opposing counsel thinks it was excessive time for us to have this as a class action, the time spent on the class action would have been the same pretty much regardless of whether there were four or six claims initially brought. Thank you. In Van Gerwen v. Guarantee Mutual Life Insurance Company, this Court said that there is a concern with double counting because doing so amounts to a double penalty against the plaintiff and her counsel and also awards defendants an unjustified windfall by requiring them to pay less than a reasonable fee. And here we have an issue of double counting because the judge, we had reduced by over 114, about 114 hours, which is why I said over 100, the hours requested and then the judge took that number and applied 283 to that. Suppose we agree with you. If we agree with you, what do we do? We simply remand the judge to do it again? I think given the clarity in the record that this Court could just say that there was an abuse of discretion and that this number of hours should be added back. And our ---- I would just interject. As one judge, I can't imagine that I would want as an appellate judge to be able to try to make an assessment of the number of hours that were reasonable. It seems to me the most we can do is state the proper legal standard and send it back to the district judge to do it. And I'm certainly fine with that as well. But I would simply conclude that the numerical allocation you made isn't permissible. But I gather that you have been trying for years to settle this, you know, not extraordinarily high attorney's fee award. Is there any point in us trying to get our mediators involved in mediating at this juncture? If we send it back, it's just going to be more time. No, Your Honor. I don't think the mediators ---- we've tried negotiating settlement in the district court. We also spent several months before this court where we had it stayed, where we also tried to reach a settlement. We have just been unable to do so. And I do not believe that mediators would help. This is like an oil and water negotiation. Yes, Your Honor. My time is up, as long as I want to reserve some for rebuttal. So I'm going to go ahead and sit down. That's fine. We'll give you a minute or two for rebuttal. Okay. I think we used up a little of your time with our ---- with the questions I had earlier. So, all right? Thank you. Thank you. Okay. We now will proceed to the argument from Ms. Bond. Ms. Bond, we can ---- each of us has a monitor right in front of our desks so we can see you clearly. Okay. Take your time. We'll start if you're ready. Your Honor, I think I'm about as ready with this contraption as I'm going to be. Okay. We'll bear with you. But we're glad we could accommodate you in this way. So go ahead. Thank you, Your Honors. And I appreciate the accommodation. When we got the call that the court wanted to move the hearing a day, there just aren't that many plain seats out of Helena. It doesn't work that way. So I'm glad we could do it. May it please the Court, my name is Sarah Bond. I'm the attorney for the defendant's appellees here. And I guess we have not too much to add other than what I put in our brief. It's our position that the court here, while he did not explain in great detail his feelings, he did express the correct legal standard under Hensley, which is the reasonable number of hours times the reasonable fee. As I understand the appellant's position, the hourly fee per hour is not in dispute, nor is there a dispute with respect to whether the successful claims were related or unrelated to the unsuccessful claims. Well, that's not really the problem. That's not really the problem. The problem is whether the judge reduced the fee after it had already been reduced in the application by the petitioner. What do you say about that? Judge Schwartzer, we would say that the plaintiffs had a burden of proof to show what their hours were in their first affidavit. They indicated that the total number of hours, including time spent on the fee petition, was 152.5. Now, subsequent declarations gave various other numbers, including 5. They explained that that was a typographical error, which it plainly was, because when you added up the numbers it came to a number very similar to what they had applied to the first time. So it was a mistake. So they explained it. Yes, Judge Berzon, they appeared to have explained it, and then they submitted a subsequent affidavit indicating the number was 513, with another number out of there, which was 283, which is what the judge used. And now, in their briefing before this court, they're using a fees-on-fee number for 94.5, which I think is the first time we've seen that. We're not contending that the fee applications were indecipherable or that they were handwritten or that there wasn't a lot of detail, just that the numbers didn't match. And given the confusion and given the ‑‑ Hi. Judge Berzon, were you starting to ask a question? Yes, I was starting to. Given the ‑‑ it was still quite easy to take the actual sheets with the time on it and add it up and figure out, and they were quite clear in their motion, and you could see by comparing it to the earlier motion that they had taken out 100 or so hours for the unsuccessful causes of action, and the judge instead took two-thirds of the second number instead of the first. So whatever confusion there was doesn't relate to the fact that there were 100 less hours for the same work in the second petition than there was in the first. And that's just not accounted for. Yes, Your Honor, and if this panel finds that that is inadequately explained for purposes of their appellate review, the appropriate procedure would be to remand for clarification from the judge. It is the State's position that because the judge articulated his reasoning and because he stated the correct legal standard, which is reasonable number of hours times a reasonable fee, that the court may affirm if there is sufficient evidence in the record to support the judge's decision. Because there is also a lower number of hours, albeit it may be a mistake, but it is what the plaintiff submitted in their first submission, that this panel could affirm because the judge stated the correct legal standard. However, this panel ‑‑ Judge Barjan, no, he did not. Our position is, under the law of this circuit, that if there is sufficient evidence in the record to support generally the judge's number, that it can be affirmed, and I cite Barjan as well as the more recent cases. I understand that, but where is it? He understood what the number was. He used 283.5. He didn't use 152. So he well understood that the number of hours in the second motion was 283, and he should have understood that that represented a reduced amount to take account of the lack of success. So the 152 number is just a red herring. He wasn't confused by that. Yes, Judge Berzon, it appears that the judge may have misapprehended the representation of the 283.5, or he may have simply intended by his preface in the order that he was, quote, unquote, quite familiar with the delivery of services by plaintiff's counsel as making some kind of adjustment in the lodestar, either for excessive pleadings or for the performance of counsel. But the state concedes that that's not clear from the order. That's not what he said he did. And, again, the state's position is, if the panel decides that it can't affirm either because, well, because the reasoning is insufficiently clear or because that's a clearly erroneous number to start with, we would assert that the correct procedure is to articulate the proper sufficiency of detail in the calculation necessary for appellate review and remand to Judge Sandstrom, who does have the experience with this case to make the decision. I mean, that is certainly the way one would ordinarily proceed. However, this fee award was issued on July 23, 2001. We're now in – it's now December 2005. I don't understand why this is just here now, and I certainly think that something that's going to add another couple of years to the fee litigation is maybe not a good idea. Why is it 4-1-1-2? Why are we now litigating this 4-1-1-2 years later? Judge Berzon, the reason that this case has been on hold is because the appellants had appealed the merits of this case, and the case was the fee petition appeal was put on hold pending the resolution of the merits. The merits litigation continued for the four interim years until finally a request for rehearing at the United States Supreme Court was finally denied, and at that time this became viable. Obviously, we could not proceed with the fee petition as long as appellants continued their appeal of the merits portion, which they have for these four years. I also add that the state anticipated the length of these appeals, and for that reason paid the appellants' counsel the amount of the order in the first instance since we admitted that we owed them something, and we deducted the costs that the court ordered the defendants from the trial and paid the BOP firm their fees plus interest shortly after the award so that at least they would have what the judge said they were entitled to, and then what injury they may be suffering would be only if they succeed either on the fee petition or the merits. But that explains the delay. We've simply been waiting for them to stop appealing the merits. Can we infer from the judge's ruling that the 283 hours was found to be reasonable because he started out with that and then reduced it by two-thirds? Can we say that that is a finding by implication that 283 hours was reasonable? Yes, Your Honor, and the state would concede that that number of hours is reasonable. Is that worth a number of hours? I'm sorry, go ahead. The only thing that's left is to determine the reasonable rate of compensation for those hours. Your Honor, I don't think that the appellants are challenging the $150 hourly fee. That was my impression. The question, I guess, if we concede that 283.5 is reasonable, then the question would be how much of the fees on fee litigation actually occurred prior to 1998, and how much they might be entitled to subsequent to that. The judge used as an ease of reference the 1998 state, beyond which because the plaintiffs didn't win anything after that, they didn't get any more fee-on-fee money. There was some fee-on-fee money awarded. He didn't award any fees on fees. He denied that, right? Your Honor, it's not clear to me how much of any of the 283 is fee-on-fee. They say in their second supplemental declaration that that doesn't include fee-on-fee, but I'm not sure that that's what, because the earlier declarations indicated that it did, I'm not sure that the judge accepted that. But again, the state concedes you can't tell that from his order. I certainly can't look at their billings and say that the 283 doesn't include any fee-on-fee prior to 1988. I don't want to take us over our time, but I wondered if you could tell me what's the total dollar amount in controversy that's disputed, or a range of it, order of magnitude. Judge Gould, Judge Gould, the plaintiff's case for her was a $348 fraud. We're not hearing anything. Houston, Houston, we have a problem. We're not, your audio is not coming through right now. Is it now? Yes. Intermittent. Hold on one second. Oh. Dennis, can we? It looks to me, just as a wild guess, that we're talking about $25,000. Does that sound about right? Yes, Your Honor, that does. Okay. So let me ask you the same question Judge Berzon asked your colleague. What is the position of the Attorney General's Office about whether Ninth Circuit mediation might permit you to resolve this matter? If this panel chooses to reverse and remand, mediation would potentially be until at this point. I don't think anybody wants to put Judge Sandstrom through going back through those billings and figuring them out. All right. Okay. Thank you. Now, we took up some of your time with the technical matter. I want to correct something I suggested earlier. Really, we thank you for accommodating the Court's desire to move this argument from Friday to today, and we didn't start off accommodating your interest in being by video. So it was the other way around. Thank you. Thank you, Your Honor. I'll sit down now so Rhian if can close. Okay. Now, Ms. Moore, you reserved a little rebuttal time. We'll give you two minutes if you need it. Thank you, Your Honor. I just wanted to, at this point, the defendants claim that we were not necessarily double penalized because the Court could have reasonably found that the 283 hours were reasonable after deducting for duplicative or otherwise unnecessary hours. However, in Gates v. I can't ever pronounce that. It's a Dutch name, I think. The court here said that a district court is required to give reasons for its deductions and that we will presume the district court implicitly rejected those specific challenges to plaintiff's billing judgment deductions that it did not expressly discuss in its order. And although the court says the defendants raised these issues, when it decides what kind of a deduction to make, the only reason the court gives for that deduction is that we only prevailed on four out of six claims. So what we have to assume from that, based on this court's precedent, is that the district court rejected the state's arguments that there were duplicative and excessive hours included in the time that was claimed. And as far as settlement goes, I guess if I didn't understand your question correct, our office has continually offered to settle, but the State of Montana sent us a letter and said we're willing to offer zero, we're just going to have to go. Okay. On that issue, if the panel decides to order the parties to mediate, we'll do it. And no one has to say anything else further on that. That's fine. In conclusion, Your Honor, I would just like to say that our prayer is that this court will find that the district court abused its discretion by using a straightforward ratio of claims won to claims made, that when it was easily ascertainable from the record the hours that were spent on the unsuccessful claims, that it then compounded that error by making a double deduction by deducting its ratio from hours that were already reduced, and that it also abused its discretion when declined to award attorney's fees for time spent litigating the fee petition. And finally, we'd ask that this court reject the State's alternative argument for upholding the district court's decision. Thank you for your time. Thank you very much. Well, we thank both counsel for their excellent arguments. And we will at this point submit the case. Again, we thank you. And, Your Honor, I would like the Edelman to be submitted.
judges: Gould, Berzon, Schwarzer